IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

MICHAEL R. FORD                              )
                                             )
v.                                           )        No. 2:09-0094
                                             )        Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION               )


To:     The Honorable John T. Nixon, Senior Judge


## REPORT AND RECOMMENDATION

        This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to

obtain judicial review of the final decision of the Social Security Administration ("SSA" or

"the Administration"), through its Commissioner, denying plaintiff's application for

disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided

under the Social Security Act ("the Act").  The case is currently pending on plaintiff's motion

for judgment on the administrative record (Docket Entry No. 18), to which defendant has

responded (Docket Entry No. 21).  Upon consideration of these papers and the transcript of

the administrative record (see Docket Entry Nos. 11 & 16),[1] and for the reasons given below,

the undersigned recommends that plaintiff's motion for judgment be DENIED, and that the

decision of the SSA be AFFIRMED.


## I.  Introduction

        Plaintiff filed his DIB and SSI applications in 2005 (Tr. 89-93).  After

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

denials through the state agency and Administrative Law Judge ("ALJ") levels of review, plaintiff's claim was remanded for the ALJ's reconsideration by the agency's Appeals Council, on December 2, 2008. (Tr. 39-41) After the matter was returned to the ALJ, a supplemental hearing was held on February 24, 2009. (Tr. 372-93) Plaintiff was represented by counsel at the hearing, and testimony was received from both plaintiff and an impartial vocational expert retained by the government. After the hearing adjourned, the ALJ took the matter under advisement until May 13, 2009, when he issued his second decision denying plaintiff's claims to disability benefits. (Tr. 362-71) That decision contains the following enumerated findings:

1.    The claimant met the insured status requirements of the Social Security Act through March 31, 2006.

2.    The claimant has not engaged in substantial gainful activity since December 31, 2004, the amended onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease, osteoarthritis, rotator cuff tendonitis, and hypertension (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with: no more than occasional climbing stairs and ramps; stooping; bending from waist to floor; ... or crawling[,] with [no] overhead reaching; no more than frequent push/pull with right upper extremity; avoid hazards such as moving parts, dangerous equipment or unprotected heights; no climbing ladders, scaffolds, or ropes; and would require work permitting a sit/stand option, permitting a position change at least every 30 minutes. He is limited to simple tasks due to marginal literacy.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 9, 1962 and was 39 years old, which is defined as a "younger individual," on the alleged onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has "marginal" literacy and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 364-67, 369-71)

On July 27, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 2-4), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

At the time of his second ALJ hearing, in February 2009, plaintiff was 46 years of age. His formal education ended after the fifth grade, and his work history included manual labor and heavy equipment operator jobs. He alleges disability beginning December 31, 2004. (Tr. 377) He testified that he was unable to work because of problems with his back, legs, and right shoulder. He testified that his physicians wanted to perform surgery on his right shoulder, but that after he lost his insurance coverage the shoulder surgery was not pursued. (Tr. 379-80) He further testified that the disc problems in his back caused pain in his right leg, that his normal level of pain was approximately a 5 or 6 on a 10-point scale, and that the pain was constant. He was not at that point taking any medication for his pain, stating that he could not afford the office visit with his physician or the medicine. (Tr. 380-81, 383) He had difficulty with reading and comprehension. (Tr. 382-83) Plaintiff further testified to a history of substance abuse problems, principally alcohol abuse, with three DUI convictions. (Tr. 385)

The following review of the medical evidence is taken from defendant's brief, Docket Entry No. 21 at 1-8:

> Plaintiff had a lumbar spine MRI on September 23, 2003, that revealed disc desiccation and bulging at L3-4, a central to right paracentral disc herniation at L4-5 that extended a short distance to efface the thecal sac anteriorly, and degenerative spondylosis at L5-S1 with central to left disc protrusion that indented the thecal sac anteriorly and mild right side foraminal stenosis (Tr.300). On September 23, Dr. Smith noted the results of the MRI, and his examination revealed that plaintiff was tender throughout the lumbar spine with straight leg raises causing lumbar and hip pain (Tr. 295). He diagnosed lumbar pain syndrome (LPS), lumbar spondylolysis, disc bulge, and degenerative disc disease, and prescribed Vioxx, Lortab, and Flexeril. *Id.*

When seen for medication refill on February 24, 2004, Dr. Smith noted that plaintiff was a construction worker, and that his lumbar region was tender (Tr. 293).  On March 17, plaintiff related that a car had fallen on him two to three days previously and he thought he had a broken rib (Tr. 292).  Plaintiff had no bruises, but had rib tenderness.  *Id.*  An x-ray showed no evidence of a rib fracture (Tr. 299).  On April 7, plaintiff reported that his medications had been stolen two days after filling them and complained that his entire body tingled and his arms and hands were numb when he bent over (Tr. 291).  Examination revealed mid-thoracic spine and neck tenderness and Ultram was prescribed.  *Id.*  Plaintiff's medications were refilled in May and June (Tr. 288-89).  On August 20, plaintiff complained of mid back pain with muscle spasm and was noted to have T-spine tenderness (Tr. 287).  He was assessed with LPS and he received refills for Percocet and Xanax, with Soma.  *Id.*  Medications were refilled in September and October (Tr. 285-86).  On November 11, plaintiff complained of right shoulder pain and upper back pain, and examination revealed decreased right shoulder range of motion (Tr. 284).

A lumbar spine MRI on November 19, 2004, revealed degenerative disc disease at L5-S1 and at L4-5, and bulging discs with no definite disc herniation (Tr. 297).  Plaintiff also had L4-5 disc annular fiber tears on the right which, according to the reading physician, "could be a source of low back pain and sciatica in some patients due to the focal nerve root irritation." *Id.*  The plaintiff's thoracic spine was normal (Tr. 297).  An MRI of plaintiff's right shoulder showed hypertrophy of the right acromioclavicular joint with secondary spur formation that encroached and impinged upon the rotator cuff muscle and tendon, and fraying of the rotator cuff tendon consistent with a peritendinitis, but no rotator cuff tear (Tr. 296-97).

On December 9, 2004, plaintiff complained that he had back pain all the time and his examination revealed low back tenderness and decreased right shoulder range of motion (Tr. 283).  Plaintiff was assessed with LPS and sciatica, his medications were continued and he was referred to orthopedics (Tr. 283).

Examination on January 6, 2005, revealed plaintiff's lumbar spine was tender, he was diagnosed with LPS and his medications were continued (Tr. 282).  On March 3, plaintiff reported that his insurance would not pay for his blood pressure medications, his examination revealed a tender lumbar spine and his medications were continued (Tr. 281).  On March 31, plaintiff was

diagnosed with contact dermatitis, LPS and hypertension, and his medications were continued (Tr. 280). On April 27, plaintiff reported that he had stepped in a hole and injured his ankle, which was feeling better (Tr. 279). Examination revealed a tender lumbar spine, he was assessed with LPS and hypertension, and Percocet was continued. *Id.* Plaintiff complained of right shoulder and low back pain on June 4, and an examination revealed decreased right shoulder range of motion (Tr. 278). Assessed with LPS, hypertension and right shoulder tendinitis, Percocet was continued. *Id.* On July 20, plaintiff continued to complain of right shoulder pain, a blister on his inner wrist was noted, and he was assessed with right shoulder tendinitis and contact dermatitis (Tr. 277). On September 5, plaintiff had decreased range of right shoulder motion and his right shoulder tendinitis was treated with Percocet (Tr. 276). On December 29, 2005, plaintiff complained of shoulder, low back and leg pain (Tr. 274). Examination revealed that plaintiff's lumbar spine was non-tender, he had full right shoulder range of motion but decreased strength with abduction. *Id.* He was assessed with LPS, degenerative disc disease and rotator cuff spurs, and need of an orthopedic evaluation was noted (Tr. 274).

Plaintiff had a Mental Status Examination on January 7, 2006, by Jeffrey Herman, SPE. Plaintiff advised that he lived with his elderly mother and assisted with her care (Tr. 263). He reported that he dropped out of school in the sixth grade, but was never in special education, and he had been unemployed for the last year and a half (Tr. 264). He had taken oxycodone for two years but it did not help him and he complained of an inability to sleep. *Id.* He reported increasing pain in his back and legs, and that he injured his shoulder when he fell while walking in the woods (Tr. 265). He also reported that alprazolam did help him "sleep a little bit" (Tr. 264). He further reported that he needed surgery for his back and shoulder and, although he lost his insurance a year ago, his doctor was trying to help him get insurance (Tr. 265). Plaintiff advised that he was placed on psychotropic medication in late 1980's due to a bad temper (Tr. 265). He reported that Prozac and Zoloft did not work for him and that he had never had counseling or psychotherapy (Tr. 266). Plaintiff acknowledged developing a tolerance for alcohol and a history of three DUI's, and reported that two days ago he drank three to four beers. *Id.* Plaintiff admitted that his last DUI was about a year ago for which he went to jail and lost his driver's license for a year (Tr. 266). Although eligible to get his license back, he did not want it because he was afraid it would happen again. *Id.* Plaintiff also admitted using marijuana several years ago, but never having marijuana related problems and he had never received any

substance abuse treatment (Tr. 266).  He further admitted being charged with simple possession when arrested for his last DUI because he had a pain pill in his pocket that was not in the original bottle (Tr. 266-67).  Plaintiff related that during the day he watched television and helped his elderly mother (Tr. 267).  He reported doing housework, including laundry, sweeping, dusting, and part of the cooking.  *Id.*  He stated that sometimes he had to lie down when his back hurt too bad, but also reported that some walking helped his back and legs (Tr. 267).  He further reported that on bad days he did no housework, cooking or walking (Tr. 268).  Plaintiff was observed to walk slowly with a substantial amount of leg stiffness. *Id.*

His mental status examination revealed that plaintiff was capable of concentrating fairly well, his judgment was grossly intact, and he appeared to be nervous although he demonstrated good abilities in the area of social interaction (Tr. 269).  He was assessed with alcohol dependence in partial remission, anxiety disorder, and a 60 GAF (Tr. 269-70).  The examiner opined that plaintiff could hold gainful employment when considering his mental condition (Tr. 270).  Plaintiff had a mild limitation in the ability to understand and remember and he could perform simple tasks (Tr. 261).  He was not significantly limited in his ability to sustain concentration and persistence, to maintain socially appropriate behavior, respond appropriately to work place changes, or be aware of normal hazards (Tr. 261-62).

A Psychiatric Review Technique was completed by Dr. Davis, a State Agency non-examining psychological consultant, on January 11, 2006, and evaluated the plaintiff under listings 12.06 (anxiety related disorders) and 12.09 (substance addiction disorders (Tr. 242-55).  The evidence was reviewed (Tr. 254) and under the "B" criteria of the listings plaintiff was found to have mild limitations in activities of daily living, maintaining social functioning and in maintaining concentration, persistence and pace, no episodes of decompensation, and no evidence to establish the presence of the "C" criteria (Tr. 252-53).

Plaintiff underwent a Physical Consultative Examination by Dr. Cox on January 22, 2006, when he noted that plaintiff was a construction worker and had last worked six months ago (Tr. 256-60).  Plaintiff reported that his medications were Alprazolam, Soma, and Oxycodone as needed, and that he occasionally took Diovan when his blood pressure went up (Tr. 257).  Plaintiff advised that for the last year he had been having problems with his hands

intermittently becoming completely numb associated with increased hand use (Tr. 257-58). Plaintiff, upon examination, appeared to be in no acute medical distress, and he was able to move throughout the examination room without the need of orthopedic device assistance (Tr. 258). He had intact motor strength, mildly decreased (4/5) right hand grip when compared to the left, normal sensation, he could stand on his toes and heels, and balance on either foot (Tr. 258-59). Plaintiff had normal range of motion in all joints except his right shoulder, and his lumbar spine range of motion was within normal limits (Tr. 259). Plaintiff's straight leg raise test (SLR) was negative on the left when lying or standing on the right; positive while lying with reproduction of back pain; there was no clear radiation of pain down the right leg with SLR in the lying or seated position (Tr. 259). Dr. Cox reviewed medical records and assessed chronic low back pain with history of previous lumbar vertebral fractures; MRI scan showing diffuse degenerative disc disease with mildly herniated disc; right shoulder rotator cuff tendinitis; chronic generalized anxiety disorder; and essential hypertension (Tr. 259). Based upon the objective medical findings, it was Dr. Cox's opinion that plaintiff could frequently lift 15 pounds, 20 pounds occasionally, noting plaintiff did most of the lifting with his left hand due to the right shoulder tendinitis and his back; plaintiff could sit for four hours with a break every thirty minutes (Tr. 260). Plaintiff was unable to stoop, bend, squat, or kneel more than two hours in an eight hour day; he was to avoid repetitive motion of his right arm and was unable to work at heights above his shoulder on the right. *Id.*

A Physical Residual Functional Capacity Assessment was completed on February 9, 2006, by Dr. Mishu, a non-examining State Agency consultant (Tr. 234-41). Dr. Mishu reviewed the record evidence (Tr. 241), and determined that plaintiff could frequently lift 10 pounds, could stand, walk, or sit six hours, was limited to frequent push/pull with the right upper extremity due to tendinitis, could frequently climb ramps/stairs, balance, kneel, and crawl, occasionally stoop and crouch, and never climb ladders/ropes/scaffolds (Tr. 236). Plaintiff had limited reaching but no other manipulative limitations or other limitations (Tr. 237-39). Dr. Mishu found plaintiff was partly credible and did not give controlling weight to Dr. Cox's opinion because plaintiff was ambulatory without assistance, had only slightly decreased grip strength, and only mild to moderate decreased range of shoulder and spine motion (Tr. 241). On February 23, 2006, plaintiff complained of right hip pain with burning, and it appears that plaintiff's doctor may have discharged him from treatment (Tr. 273).

On March 9, 2006, plaintiff was seen in the emergency room of Cookeville Regional Medical Center[2] for low back pain and right sciatica (Tr. 303). He explained that he had not seen his physician, Dr. Smith, in a month because the doctor "won't help me," and reported having run out of Percocet and Xanax that morning. *Id.* Examination revealed that plaintiff had a normal mood, no apparent motor or sensory deficits, normal reflexes, and his extremities were non-tender with full range of motion (Tr. 306). Assessed with chronic low back pain, plaintiff was given medication and advised that he had to follow-up with his primary care provider for refills (Tr. 306).

On April 4, 2009, plaintiff was seen at Livingston Regional Hospital emergency room for back pain following a fall at home three weeks ago[3] (Tr. 222, 224). Plaintiff was in moderate distress with normal mood and affect, normal motor function, and no numbness or tingling (Tr. 223-24). X-rays revealed mild compression fractures at L1 and L2 (Tr. 227). Plaintiff was assessed with lumbar myofascial strain and degenerative disc disease (Tr. 223). Plaintiff was given Lortab, Indocin, Medrol, and Flexeril with instructions to followup with his primary care provider or return as needed (Tr. 2626). Plaintiff returned to the emergency room on April 9, 2009, with complaints of back pain following a fall three weeks previously (Tr. 214-15, 217). He had a normal mood and affect, and was in moderate to severe distress with muscle spasms (Tr. 216). A lumbar spine MRI revealed a large posterior central herniated nucleus pulposus (HNP) at L3-4, a mild, broad based bulge at L4-5 that caused some minimal foraminal narrowing, and a broad based bulge posterior centrally at L5-S1 causing some mild canal stenosis with some mild bilateral foraminal narrowing (Tr. 219). Old compression fractures were noted at T12, L1, and L2. *Id.* Plaintiff was to followup with Dr. Cox on April 13, 2009, who provided a referral to physical therapy treatment (Tr. 210, 211, 218).

### III. Conclusions of Law

#### A. <u>Standard of Review</u>

---

[2]It was noted that plaintiff was unemployed and uninsured (T.302).

[3]It was noted that plaintiff was still unemployed and uninsured (T.221).

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B.  Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

 The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

## C. Plaintiff's Statement of Errors

Plaintiff raises three challenges to the ALJ's decision. First, he argues that his shoulder and back impairments meet or medically equal the criteria of Listings 1.02B and 1.04A, respectively. Second, he argues that the ALJ failed to properly analyze his subjective complaints of pain and limitations resulting therefrom. Finally, plaintiff argues that the ALJ improperly rejected the assessment of the consultative examiner, Dr. Cox, in making his RFC finding, when that assessment and the medical record as a whole do not support plaintiff's ability to perform light work as defined in the regulations.

Plaintiff's argument based on the listings must fail on its own terms. In order to meet or medically equal a listing, all the criteria of the listing must be established in the medical evidence, or fairly represented by comparable, documented findings of equal medical severity. See Sullivan v. Zebley, 493 U.S. 521, 531 (1990). While plaintiff recognizes this requirement in his brief (Docket Entry No. 19 at 8), his ensuing argument ignores the absence of listing criteria, or their medical equivalents, from the medical evidence in this case. Plaintiff argues that the ALJ erred in failing to explicitly address Listings 1.02[4] and

---

[4]Listing 1.02 describes, in pertinent part,

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical

1.04.[5]  However, the ALJ did explicitly reference his consideration of musculoskeletal

impairments (to which category the impairments recognized in Listings 1.02 and 1.04

belong), and found no medical evidence of any such impairment at a listing level of severity.

(Tr. 366)  While this finding is not supported by any particular analysis, it is not legally

insufficient in view of the absence of record evidence indicating that plaintiff's impairments

could be viewed as meeting or equaling the listings.  See Price v. Heckler, 767 F.2d 281 (6th

Cir. 1985); Motley v. Comm'r of Soc. Sec., 2009 WL 959876, at *13 (S.D. Ohio Apr. 8, 2009)

("Where, as here, the evidence of record suggests plaintiff may meet or equal Listing 1.02A,

the ALJ is required to perform a meaningful analysis to enable the Court [to] perform its

---

deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and
chronic joint pain and stiffness with signs of limitation of motion or other abnormal
motion of the affected joint(s), and findings on appropriate medically acceptable
imaging of joint space narrowing, bony destruction, or ankylosis of the affected
joint(s), With: . . .
    B.  Involvement of one major peripheral joint in each upper extremity
    (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform
    fine and gross movements effectively, as defined in 1.00B2c.

In turn, section 1.00B2c provides that "[i]nability to perform fine and gross movements
effectively means an extreme loss of function of both upper extremities[.]"

[5]Listing 1.04 describes, in pertinent part,

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal
stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),
resulting in compromise of a nerve root (including the cauda equina) or the spinal
cord.  With:
    A.  Evidence of nerve root compression characterized by neuro-
    anatomic distribution of pain, limitation of motion of the spine, motor
    loss (atrophy with associated muscle weakness or muscle weakness)
    accompanied by sensory or reflex loss and, if there is involvement of
    the lower back, positive straight-leg raising test (sitting and supine)[.]

reviewing function."). Specifically, there is no evidence of involvement with one major joint in each of plaintiff's arms, but only in his right arm; therefore, Listing 1.02B cannot be met. With regard to Listing 1.04A, there is no evidence of motor loss accompanied by sensory or reflex loss, and therefore plaintiff's lumbar spine impairment does not meet the listing. "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d at 125 (citing Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986)). In short, without suggesting that the record contains other medical findings equivalent to the missing elements of the listings, plaintiff cannot make his case for disability under Listings 1.02 or 1.04.

Plaintiff's second challenge is to the ALJ's finding that his subjective complaints of disabling pain are less than fully credible. On this issue, the ALJ found as follows:

> No treating physician has reported any limitations of function or assigned any restrictions of activity. The undersigned finds that the claimant's subjective complaints of disabling physical and mental limitations are disproportionate to the objective clinical and diagnostic medical evidence. His clinical and diagnostic records fail to document any abnormality which could reasonably be expected to result in the degree of limitations alleged. ... The claimant testified he has not received treatment in over two years. Lack of regular treatment weakens the credibility of the claimant's complaints. ... It is difficult to attribute the degree of limitation to the claimant's medical condition in view of the relatively weak medical evidence and other factors discussed in this decision. . . .
>
> The undersigned finds that the claimant's subjective complaints of disabling physical limitations are disproportionate to the objective clinical and diagnostic medical evidence. His admitted daily activities are not limited to the extent one would expect, given the claimant's complaints of disabling symptoms and limitations. He reported he attends to his personal needs, helps

care for his elderly mother, sweeps, dusts, vacuums, does laundry, watches
television, cooks occasionally, and shops. His ability to carry out a range of
daily activities tends to negate the credibility of his subjective complaints.
Clearly, the claimant's ability to perform such a broad array of daily activities
reflects on his ability to perform work. Treatment for allegations of severe
pain has been minimal, conservative, and non-aggressive. The claimant has a
sporadic work record, evidencing a lack of motivation. The evidence of record
also indicates that the claimant has not sought medical treatment for a
prolonged period of time. . . .

(Tr. 368-69)

The regulations require the ALJ, upon finding "a medically determinable

impairment(s) that could reasonably be expected to produce [the claimant's] symptoms," to

then evaluate the intensity and persistence of those symptoms by reference to the record as a

whole, including both the objective medical evidence and other evidence bearing on the

severity of the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(1)-(3);

416.929(c)(1)-(3). There is no question that a claimant's subjective complaints can support a

finding of disability -- irrespective of the credibility of that claimant's statements before the

agency -- if they are grounded in an objectively established, underlying medical condition

and are borne out by the medical and other evidence of record. Id.; see, e.g., Walters v.

Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997); SSR 96-7p, 1996 WL 374186, at *1, 5

(describing the scope of the analysis as including "the objective medical evidence, the

individual's own statements about symptoms, statements and other information provided by

treating or examining physicians or psychologists and other persons about the symptoms and

how they affect the individual, and any other relevant evidence in the case record[;]" "a

finding that an individual's statements are not credible, or not wholly credible, is not in itself

sufficient to establish that the individual is not disabled.").  Such "other evidence" which the ALJ is bound to consider includes evidence of the following factors:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use of have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

It is well established that an ALJ may properly consider the credibility of a claimant in conjunction with his consideration of the medical and other evidence described above, and that this credibility finding is due great weight and deference in light of the ALJ's opportunity to observe the claimant's demeanor while testifying.  Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003).  In considering the ALJ's finding on the weight of plaintiff's subjective complaints, this court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial evidence in the record."  Id.

In light of this standard, the ALJ's credibility finding and rejection of plaintiff's complaint of disabling pain are plainly supported by substantial evidence.  It is clear that

plaintiff's severe back and shoulder impairments are sufficiently established in the objective medical evidence as capable of producing pain, and the ALJ so found. Indeed, the ALJ found plaintiff significantly limited by these impairments, such that he could only perform a reduced range of light work. But, as far as plaintiff's allegation of pain so severe as to preclude all work, the ALJ found that allegation inconsistent with both the objective medical evidence and plaintiff's report of daily activities. The medical evidence, described by the ALJ as "relatively weak" (Tr. 368), is not entirely insufficient as support for the notion that plaintiff's back pain could be severe, particularly the MRI report of a large lumbar disc herniation following a fall that occurred between the time of the ALJ hearing and the issuance of his decision. (Tr. 209-27) However, contrary to plaintiff's assertion, the MRI report does not indicate any involvement of a nerve root or the spinal cord at the level of the disc herniation, nor did plaintiff complain of radiating pain (Tr. 215). Moreover, as the ALJ noted, the treatment provided appears to have been conservative, with a referral to physical therapy to evaluate and treat the injury over a three-week period. (Tr. 210) Moreover, plaintiff's activities of daily living prior to this 2009 injury were relatively robust, including his ability to help care for his elderly mother, sweep, dust, vacuum, do laundry, cook occasionally, and shop. While the ability to perform such activities may not be necessarily inconsistent with the claim of disabling pain, it is plainly a factor to be weighed in the analysis. Given the deference due the ALJ's credibility finding and the substantial evidence supporting that finding here, the undersigned concludes that plaintiff's argument to the contrary must fail.

Lastly, plaintiff takes issue with the ALJ's finding of his ability to perform a

reduced range of light work. Dr. Cox, the consultative examiner in this case who also treated plaintiff several years prior to his alleged onset date (Tr. 308-22) and immediately following his 2009 disc herniation (Tr. 210), offered the only assessment of plaintiff's work-related functional abilities on record from an examining source. In that January 2006 assessment, Dr. Cox opined as follows:

> Based on the patient's objective medical findings of 01/17/2006 [] he could lift up to 15 pounds frequently and up to 20 pounds occasionally. He had to do most of the lifting with his left hand since the right shoulder and right arm are somewhat afflicted by the tendinitis in the right shoulder. He is also limited from the standpoint of his back. He is able to sit for up to four hours in an eight-hour workday with break period every 30 minutes. He can stand for up to four hours in an eight-hour workday with a break period every 30 minutes. He is unable to stoop, bend, squat, or kneel more than two hours total in an eight-hour workday. He should avoid repetitive motion of his right arm because of the tendinitis of the right shoulder. He is unable to work in a height above his shoulder on the right....

(Tr. 259-60)

The ALJ gave no weight to Dr. Cox's opinion as to plaintiff's 4-hour limitation on sitting and standing/walking with breaks at 30-minute intervals, stating that such limitation "is wholly inconsistent" with the record evidence. (Tr. 368) Rather, the ALJ generally found plaintiff's limitations compatible with the assessment of the nonexamining state agency consultant, Dr. Mishu, who opined that plaintiff could both sit and stand/walk for about 6 out of 8 hours, and did not require a sit/stand option. (Tr. 235, 368) Dr. Mishu assessed plaintiff's ability to lift/carry as limited to 20 pounds occasionally and 10 pounds frequently, and further opined that plaintiff was limited by his right shoulder tendinitis to no more than frequent pushing and/or pulling, and no more than occasional overhead reaching.

(Tr. 235, 237)

In weighing these consultants' assessments, the ALJ ultimately found that plaintiff could both sit and stand for 6 out of 8 hours, as indicated by Dr. Mishu, but that he required the option to change between these positions throughout the eight-hour workday to relieve his discomfort, with such a position change allowed at least as frequently as every 30 minutes, as indicated by Dr. Cox. The ALJ further determined that Dr. Mishu's slightly more restrictive assessment as to lifting/carrying should prevail; that Dr. Cox's restriction against overhead reaching should prevail; and that for other movements of plaintiff's right arm, he could not perform such movements on a repetitive basis, but could do so on a frequent basis, heeding both Dr. Cox's and Dr. Mishu's recommendations. Although plaintiff argues that the proof of his right shoulder impairment demonstrates his total loss of ability to use his right arm, the record does not support this assertion. While Dr. Cox recommended that plaintiff avoid repetitive motion of his right arm, the values he obtained upon testing the range of motion in plaintiff's right shoulder were characterized by Dr. Mishu as only mildly decreased, and motor strength in the muscles of the arm was normal. (Tr. 241, 258-59) In making his RFC finding, the ALJ is not required to wholly accept or reject a given medical assessment, but may rely upon the portions of the assessment that are supported by the totality of the medical and nonmedical evidence. See Schmidt v. Apfel, 496 F.3d 833, 845 (7th Cir. 2007) (citing Diaz v. Chater, 55 F.3d 300, 306 n.2 (7th Cir. 1995)); Cooley v. Comm'r of Soc. Sec., 2009 WL 2982881, at *5-6 (S.D. Ohio Sept. 15, 2009). In light of the ALJ's credibility determination, which rested in part on plaintiff's ability to perform activities such as sweeping, dusting, vacuuming, and doing laundry, and the vocational expert's clarification

that the jobs identified by her and relied upon by the ALJ required frequent reaching, but no pushing or pulling (Tr. 389, 391), the undersigned finds that substantial evidence supports the finding of plaintiff's RFC for a reduced range of light work. The ALJ properly consulted the vocational expert to clarify the vocational impact of plaintiff's credible sit/stand and right-arm reaching limitations, and was entitled to rely upon the resulting testimony to the existence of a significant number of jobs in the national economy which plaintiff could be expected to perform. <u>See</u> Soc. Sec. Rul. 83-12, 1983 WL 31253 (S.S.A.). Accordingly, the decision of the SSA should be affirmed.

## IV.  Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 7th day of April, 2011.


  s/ John S. Bryant                    
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE